IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

---

DAVID CANADA,

      **Plaintiff,**

v.                                   **Case No. 1:25-cv-01036-STA-cgc**

MICHELLE KING,

      **Defendant.**

---

## REPORT AND RECOMMENDATION

---

Plaintiff David King filed this judicial action to obtain review of the Commissioner of the Social Security Administration's ("Commissioner") final decision denying his application for disability insurance benefits ("DIB") pursuant to Title II of the Social Security Act, 42 United States Code Section 401, *et seq*. (D.E. #1). This case has been referred to the United States Magistrate Judge for Report and Recommendation. (D.E. #9). For the reasons set forth herein, it is RECOMMENDED that this case be REMANDED for further consideration of whether Plaintiff meets the criteria of Listing 12.15 and for further consideration of his residual functional capacity.

### I.    Background

On February 2, 2022, Plaintiff filed an application for DIB benefits. (Administrative Transcript ("Tr.") at 198-202). He alleged a disability onset date of October 1, 2016. (Tr. at 199). His claims were denied initially on December 2, 2022 (Tr. at 95-99) and on May 18, 2023 upon reconsideration (Tr. at 110-13). Plaintiff requested a hearing before an Administrative Law Judge ("ALJ") on June 8, 2028. (Tr. at 114-15). A hearing was held before the ALJ on October 12,

2013.  (Tr. at 32-62).  The ALJ issued an order denying benefits on January19, 2024.  (Tr. at 11-31).  Plaintiff requested review by the Appeals Council, which was denied on December 9, 2024.  (Tr. at 1-6).

## II.    Commissioner's Determination of Disability

The Act defines disability as the inability to engage in substantial gainful activity.  42 U.S.C. § 423(d)(1).  The claimant bears the ultimate burden of establishing an entitlement to benefits.  *Born v. Secretary of Health & Human Services.*, 923 F.2d 1168, 1174 (6th Cir.1990).  The initial burden of going forward is on the claimant to show that he is disabled from engaging in his former employment; the burden of going forward then shifts to the Commissioner to demonstrate the existence of available employment compatible with the claimant's disability and background.  *Id.*

The Commissioner conducts the following, five-step analysis to determine if an individual is disabled within the meaning of the Act:

> 1. An individual who is engaging in substantial gainful activity will not be found to be disabled regardless of medical findings.
>
> 2. An individual who does not have a severe impairment will not be found to be disabled.
>
> 3. A finding of disability will be made without consideration of vocational factors if an individual is not working and is suffering from a severe impairment which meets the duration requirement and which meets or equals a listed impairment in Appendix 1 to Subpart P of the regulations.
>
> 4. An individual who can perform work that he has done in the past will not be found to be disabled.
>
> 5. If an individual cannot perform his or her past work, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed.

*Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301 (6th Cir. 1988).

Before proceeding to Step Four of the sequential analysis, the ALJ must determine the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(a)(4), 404.1545, 416.920(a)(4), 416.945. The RFC is a determination of the most an individual can still do despite the physical and/or mental limitations that she experiences in a work setting due to his impairment(s) and any symptoms resulting therefrom. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). Further review is not necessary if it is determined that an individual is not disabled at any point in this sequential analysis. 20 C.F.R. §§ 404.1520, 416.920.

Here, the ALJ determined as follows: (1) the claimant last met the insured status requirements of the Act on December 31, 2021; (2) the claimant did not engage in substantial gainful activity during the period from his alleged onset date of October 1, 2016 through his date last insured of December 31, 2021; (3) through the date last insured, the claimant had the following severe impairments: post-traumatic stress disorder ("PTSD") and major depressive disorder; (4) through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1; (5) after careful consideration of the entire record, the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant can maintain concentration, persistence and pace for simple, routine tasks involving occasional workplace changes and occasional interaction with the general public, coworkers, and supervisors; (6) through the date last insured, the claimant was unable to perform any past relevant work; (7) the claimant was born on April 17, 1981 and was 40 years old, which is defined as a younger individual age 18-49, on the date last insured; (8) the claimant has at least a high school education; (9) transferability of job

3

skills is not material to the determination because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled" whether or not the claimant has transferrable job skills; (10) through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed; (11) the claimant was not under a disability, as defined by the Act, at any time from October 1, 2016 through December 31, 2021.

### III.    Standard of Judicial Review

Pursuant to 42 U.S.C. § 405(g), a claimant may obtain judicial review of any final decision made by the Commissioner after a hearing to which she was a party. "The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." *Id.* The court's review is limited to determining whether or not there is substantial evidence to support the Commissioner's decision, 42 U.S.C. § 405(g); *Wyatt v. Secretary of Health & Human Services*, 974 F.2d 680, 683 (6th Cir.1992); *Cohen v. Secretary of Health & Human Srvs.*, 964 F.2d 524, 528 (6th Cir.1992), and whether the correct legal standards were applied, *Landsaw v. Secretary of Health & Human Servs.,* 803 F.2d 211, 213 (6th Cir.1986).

The Commissioner, not the court, is charged with the duty to weigh the evidence, to make credibility determinations and resolve material conflicts in the testimony, and to decide the case accordingly. *See Crum v. Sullivan*, 921 F.2d 642, 644 (6th Cir. 1990); *Garner v. Heckler,* 745 F.2d 383, 387 (6th Cir. 1984). When substantial evidence supports the Commissioner's

determination, it is conclusive, even if substantial evidence also supports the opposite conclusion. *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986).

### IV.     Issues Presented for Judicial Review

On February 5, 2025, Plaintiff filed his Complaint seeking judicial review of the Commissioner's final decision denying him DIB benefits.  On April 1, 2025, the certified administrative record was filed with this Court.  (D.E. #8).

On June 2, 2025, Plaintiff filed his brief seeking that this Court either reverse the decision of the Commissioner or remand the case for further review.  Plaintiff asserts that the ALJ erred by failing to adequately evaluate at Step Three whether Plaintiff met Listing 12.15 and by finding, when assessing Plaintiff's residual functional capacity ("RFC"), that he could meet the mental demands of full-time work.

On June 30, 2025, the Commissioner filed her brief on the issues presented for judicial review.  (D.E. #14).  The Commissioner argues that substantial evidence supports the ALJ's Step Three finding that Plaintiff's mental impairments did not meet Listing 12.15.  The Commissioner further argues that substantial evidence supports the ALJ's RFC determination and that the record does not warrant limitations beyond those imposed by the ALJ.  On August 13, 2025, Plaintiff filed his Reply brief, which addresses the issues raised by the Commissioner in her briefing.  (D.E. #17).

### V.  Proposed Analysis and Conclusions of Law

#### A.  Step Three

Plaintiff argues that the ALJ erred by concluding that his impairments did not meet the

criteria of Listing 12.15, which requires as follows:

12.15  Trauma- and stressor-related disorders (see 12.00B11), satisfied by A and
B, or A and C:

A.  Medical documentation of all of the following:

1.   Exposure to actual or threatened death, serious injury, or
violence;
2. Subsequent involuntary re-experiencing of the traumatic event
(for example, intrusive memories, dreams, or flashbacks);
3.  Avoidance of external reminders of the event;
4.  Disturbance in mood and behavior; and
5. Increases in arousal and reactivity (for example, exaggerated
startle response, sleep disturbance).

AND

B.  Extreme limitation of one, or marked limitation of two, of the following areas
of mental functioning (see 12.00F):

1.  Understand, remember, or apply information (see 12.00E1)
2.  Interact with others (see 12.00E2)
3.  Concentrate, persist, or maintain pace (see 12.00E3)
4.  Adapt or manage oneself (see 12.00E4)

OR

C.  Your mental disorder in this listing category is "serious and persistent;" that is,
you have a medically documented history of the existence of the disorder over a
period of at least 2 years, and there is evidence of both:

1.   Medical treatment, mental health therapy, psychosocial
support(s), or a highly structured setting(s) that is ongoing and
diminishes the symptoms and signs of your mental disorder
(see 12.00G2b); and

2.   Marginal adjustment, that is, you have minimal capacity to
adapt to changes in your environment or to demands that are
not already part of your daily life (see 12.00G2c).

6

20 C.F.R., Pt. 404, Subpt. P, App. 1.

In reviewing the claimant's mental impairments, the ALJ did not discuss the Paragraph A criteria. He set forth the Paragraph B criteria and found that Plaintiff only had the following limitations: a mild limitation in understanding, remembering, or applying information; a moderate limitation in interacting with others; a moderate limitation with regard to concentrating, persisting, or maintaining pace; and, a moderate limitation with adapting and managing himself. (Tr. at 19). Because the ALJ concluded that Plaintiff did not have two "marked" or one "extreme" limitation, he found that the Paragraph B criteria were not met. (*Id.*) The ALJ further stated that he considered whether the Paragraph C criteria were satisfied but that there is "no evidence in the record" to meet the Paragraph C criteria. (*Id.*)

Plaintiff argues that the record reflects that the criteria of Paragraphs A and C have been met. With respect to Paragraph A, the report of Dr. Marla E. Ayers, Ph.D. sets forth that Plaintiff was initially diagnosed with PTSD in November 2011 and that he meets all twenty-four criteria for a PTSD diagnosis. (Tr. at 433-34, 437-38). Dr. Ayers further stated that Plaintiff completed the PTSD Checklist for DSM-5 and scored a 67 out of 80 on severity of his symptoms. (Tr. at 441).

With respect to Paragraph C, Dr. Ayers' report stated that Plaintiff had previously been examined in 2011, with the examiner finding that he had "occupational and social impairment with occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks, although generally functioning satisfactorily, with normal routine behavior, self-care and conversation." (Tr. at 434). Similarly, in October 2013, his records reflected that he had "occupational and social impairment with deficiencies in most areas, such as work, school, family relations, judgment, thinking and/or mood." (*Id.*) His occupational history reflects certain

7

on-the-job difficulties, including being "fired for issues that included anger, tardiness, getting along with others in the work setting, and insubordination"; the report does not specifically tie these to PTSD, but it documents that Plaintiff self-reports that he believed some of his difficulties related to being unable to sleep well at night, which Dr. Ayers' report does document as being a symptom that relates to his PTSD symptoms. (Tr. at 434, 436, 439, 442). Dr. Ayers additionally attributes his "[d]ifficulty in establishing and maintaining effective work and social relationships," "[d]ifficulty in adapting to stressful circumstances, including work or a worklike setting," and "[d]isturbances of motivation and mood" to his PTSD diagnosis. (Tr. at 439; *see also* Tr. at 42).

Dr. Ayers continued, finding that Plaintiff's "Memphis VAMC CPRS records reflected that veteran has continued to be followed by Psychiatry for outpatient medication management" and attends appointments "once every three months on average." (Tr. at 434, 436). Dr. Ayers considered his established relationship with a mental health provider and his active participation treatment as protective factors. (Tr. at 439). Dr. Ayers' report further discusses at length the psychiatry notes in his record from February 2014 to December 22, 2016, which document his prescribed medication throughout this period and detail certain periods of improvement with medication and treatment but other periods of more debilitating symptoms. (Tr. at 434-35). Dr. Ayers opined that, due to Plaintiff's PTSD diagnosis, he exhibits "[o]ccupational and social impairment with deficiencies in most areas, such as work, school, family relations, judgment, thinking and/or mood." (Tr. at 433).

Additionally with respect to Paragraph C, Plaintiff has pointed to over six hundred pages of treatment records from the Veterans Affairs providers that he states further support that he meets the criteria. (Tr. at 415-1022). These medical records include a broad range of information, much of which does not pertain to his PTSD diagnosis; however, within them, there are numerous

8

consultations relating to his mental health, including some that discuss his ongoing treatment for PTSD. (*See, e.g.* Tr. at 547-50, 570, 574-77, 581, 590-602, 803, 813-848, 854-58, 860-64, 874-77, 879-910, 918-21, 925, 932, 941-48, 958-963).

Upon review, the record reflects that Plaintiff meets the criteria of Listing 12.15(A) (Tr. at 437-38). The record further contains medical documentation of the existence of Plaintiff's PTSD diagnosis over a period of at least two years, which satisfies Listing 12.15(C), as well as evidence of medical treatment and mental health therapy that diminishes symptoms, which appears that may satisfy Listing 12.15(C)(1) or, at the very least, require further consideration. (*See id*.) Thus, additional review is necessary as to whether Plaintiff meets the criteria of Listing 12.15(C)(2). As the ALJ did not discuss Paragraph C in further depth, it is RECOMMENDED that the case be REMANDED to the ALJ for further consideration of whether Plaintiff meets Listing 12.15.[1]

### B. Residual Functional Capacity

Plaintiff additionally argues that the ALJ erred in determining his RFC. Specifically, Plaintiff asserts that the ALJ's RFC determination conflicts with both Dr. Ayers' report as to the extent of his PTSD symptoms and their effects on his daily life (*see* Tr. at 433-443) as well as the vocational expert's testimony that an individual who either comes to work late more than twice per month, leaves work early more than twice per month, and/or is off task more than 10% of the

---

[1] In the ALJ's RFC determination, he further discusses the findings of Dr Carlos. Jusiono-Berrios and Dr. Jeffrey Bryant. Dr. Jusinos concluded that Plaintiff did not meet "Paragraph C"; however, upon review, Dr. Jusion-Berrios opined that he did not meet the Paragraph C criteria of Listing 12.04 for Depressive, Bipolar, and Related Disorders, not Paragraph C of Listing 12.15 for Trauma. (*See*, *e.g.* Tr. at 73-74). Further, the ALJ found that Dr. Jusions-Berrios' findings were "overly optimistic" and only "partially persuasive" because they failed to "fully consider the impact of the claimant's PTSD." (Tr. at 24). As to Dr. Bryant, he expressly opined that he did not meet Paragraph C of Listing 12.15. However, the ALJ also found Dr. Bryant's opinions to only be partially persuasive.

workday would not be able to maintain competitive employment and would be terminated (*see* Tr. at 58-60).

Upon review, the ALJ's RFC determination considers extensive evidence of record, but it does not explicitly discuss either the significant limitations found by Dr. Ayers or the vocational expert's opinion that there would be "no competitive jobs" in the marketplace that would allow for routine adjustments in hours worked or in inconsistent ability to focus.    Accordingly, it is RECOMMENDED that, on remand, if the ALJ determines that Plaintiff does not meet Listing 12.15, the ALJ should reconsider the RFC determination with consideration of both Dr. Ayer's report and the vocational expert's testimony.

**VI.    Conclusion**

For the reasons set forth herein, it is RECOMMENDED that the final decision of the Comissioner is REVERSED AND REMANDED for rehearing and reconsideration of the evidence pursuant to Sentence Four of 42 United States Code Section 405(g).

**SIGNED** this 24th day of February, 2026.

s/ Charmiane G. Claxton
CHARMIANE G. CLAXTON
UNITED STATES MAGISTRATE JUDGE

**ANY OBJECTIONS OR EXCEPTIONS TO THIS REPORT MUST BE FILED WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY OF THE REPORT.  28 U.S.C. § 636(b)(1)(C).  FAILURE TO FILE THEM WITHIN FOURTEEN (14) DAYS MAY CONSTITUTE A WAIVER AND/OR FORFEITURE OF THE OPPORTUNITY TO RAISE OBJECTIONS, EXCEPTIONS, AND ANY FURTHER APPEAL.**